OPINION
Plaintiffs-appellants, Ronald Salyer (individually, "plaintiff") and Marilyn Salyer, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees. Because the trial court properly found plaintiffs' claims barred by the applicable statute of limitations, we affirm.
In November 1975, plaintiff was diagnosed with testicular cancer and had a testicle surgically removed. From December 15, 1975 through January 21, 1976, plaintiff underwent radiation therapy at Riverside United Methodist Hospital ("Riverside"). During the same period, Dr. Joel Axt, a physicist, miscalculated the radiation output of the Cobalt 60 radiation therapy unit at Riverside.
Following plaintiff's third radiation treatment, plaintiff experienced what he believed to be radiation poisoning. Plaintiff discussed his concerns with Dr. Stephen Andresen, who reduced the radiation dosage for the remaining treatments. During his radiation therapy, plaintiff nonetheless experienced intense pain in the areas of his body that were irradiated, at least one open wound, and burned skin that became indurated and permanently discolored. Plaintiff's reactions during and immediately following the radiation treatments were different than those reported to him as normal or common.
During a follow-up office visit in 1976, Dr. Andresen informed plaintiff that plaintiff had received more radiation than had been intended, and as a result scarring or fibrosis, or both, could result. In fact, permanent scar tissue developed in plaintiff's abdomen as a result of the radiation therapy, causing pain, discomfort, and muscle cramps. The scar tissue also pushed air from his lungs when he bent over, resulting in difficulty in plaintiff's performing his job duties as a HVAC serviceman in the 1970s and 1980s.
Within a year of plaintiff's last radiation treatment, plaintiff became aware through news reports of other radiation overdoses at Riverside. Between 1976 and 1980, plaintiff learned that other overdose patients had filed lawsuits. Plaintiff conferred with an attorney about his own situation within a year of becoming aware of radiation overdoses at Riverside, but he did not pursue litigation at that time.
In March 1995, plaintiff was informed that he had adult-onset diabetes. Later, in 1996, plaintiff developed low back and hip pain for which he sought medical treatment and received x-rays. According to plaintiff, the x-rays revealed he was experiencing bone disintegration in his low back and hip, and he then first became aware that his low back and hip pain were related to his previous radiation exposure.
In January 1997, plaintiffs filed a lawsuit alleging that plaintiff's diabetic condition was caused by his radiation overdose; plaintiffs later voluntarily dismissed the complaint. On October 3, 2000, plaintiffs refiled the present complaint against Riverside, Stephen Andresen, M.D., Joel Axt, Ph.D., and John Doe corporations and physicians. Plaintiffs sought recovery for medical malpractice and loss of consortium, but did not include the earlier demand for damages due to plaintiff's diabetic condition.
Defendants Riverside, Andresen, and Axt moved for summary judgment, which the trial court granted. Plaintiffs timely appeal, and assign the following errors:
Assignment of Error No. 1:
 THE COMMON PLEAS COURT ERRED TO THE PREJUDICE OF APPELLANTS RONALD SALYER AND MARILYN SALYER IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS SINCE THEY WERE NOT ENTITLED TO SUMMARY JUDGMENT, AS A MATTER OF LAW, UNDER CIVIL RULE 56.
ASSIGNMENT OF ERROR NO. 2:
 THE COMMON PLEAS COURT ERRED OR ABUSED ITS DISCRETION, TO THE PREJUDICE OF APPELLANTS, IN RENDERING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS SINCE A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO THE DATE UPON WHICH RONALD SALYER BECAME AWARE OR SHOULD HAVE BECOME AWARE THAT HE HAD BEEN INJURED.
Because plaintiffs' assignments of error are interrelated, we address them jointly.
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
Former R.C. 2305.11(B)(1), in effect at the time plaintiffs filed and refiled their complaint, provided that "[s]ubject to division (B)(2) of this section, an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued[.]" Absent legislative definition, the judiciary determines when a cause accrues for purposes of statutes of limitations. See, e.g., O'Stricker v. Jim Walter Corp. (1983), 4 Ohio St.3d 84, paragraph one of the syllabus.
"[A] cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." Oliver v. Kaiser Community Health Found. (1983),5 Ohio St.3d 111, syllabus; Akers v. Alonzo (1992), 65 Ohio St.3d 422,424-425. In Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, paragraph one of the syllabus, the Supreme Court directed that, in determining the accrual date of a medical malpractice cause of action, "the trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." See, also, Grubb v. Columbus Community Hosp. (1997),117 Ohio App.3d 670, 675, dismissed, appeal not allowed,79 Ohio St.3d 1418.
In Allenius v. Thomas (1989), 42 Ohio St.3d 131, syllabus, the Ohio Supreme Court clarified the "extent and seriousness of his condition" language of Hershberger by requiring "that there be an occurrence of a `cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies."
Explaining "cognizable event," Allenius specified that a patient need not be "aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the `cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." Id. at 133-134. (Emphasis sic.) Thus, "[i]f a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff * * * to the necessity for investigation and pursuit of her remedies." Id. at 134, quoting Graham v. Hansen (1982), 128 Cal.App.3d 965,973, 180 Cal.Rptr. 604, 609. See, also, Flowers v. Walker (1992),63 Ohio St.3d 546, 549 ("A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. * * * Rather, the `cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies"). (Citation omitted.)
Under Allenius, the determinative issue resolves to identifying the cognizable event that led or should have led plaintiff to believe that the condition of which he complains is related to a previously rendered medical procedure, treatment or diagnosis, placing plaintiff on notice of the need to pursue his possible remedies. Id. at 131, syllabus. Plaintiffs contend the cognizable event occurred in November 1996 when plaintiff claims he first became aware that his previous radiation exposure was related to his low back and hip pain. Defendants assert plaintiff was aware of actionable injuries as early as 1976, but plaintiff waited approximately 20 years before seeking a legal remedy.
Contrary to plaintiffs' contention, several events occurred well before November 1996 that should have led plaintiff to believe the condition of which he now complains is related to a previously rendered medical treatment, and thus should have placed plaintiff on notice of the need to pursue his possible remedies. During a follow-up office visit in 1976, Dr. Andresen informed plaintiff that plaintiff had received more radiation than had been intended and, as a result, scarring or fibrosis, or both, could occur. In fact, plaintiff later experienced painful symptoms that were consistent with the sequelae of which Dr. Andresen had informed plaintiff: scar tissue developed in plaintiff's abdomen that caused pain, discomfort, and muscle cramps and rendered job performance difficult.
Plaintiffs nonetheless contend plaintiff first became aware in November 1996 that bone disintegration in his lower back and hip was related to his previous radiation exposure and, therefore, no cause of action existed until November 1996.
Although plaintiff may not have become aware of the full extent of his injuries related to past radiation overexposure until November 1996, as early as 1976 Dr. Andresen informed plaintiff that plaintiff had received radiation overexposure and potential problems from it. Under the facts of this case and the test set forth in Allenius, Dr. Andresen's admission to plaintiff was a cognizable event that alerted or should have alerted plaintiff an improper medical procedure or treatment had occurred. As a result, plaintiff was put on notice to investigate the facts and circumstances relevant to his claim in order to pursue his remedies. See Flowers at 549. Indeed, plaintiff did investigate possible remedies because within a year of his radiation overdose, plaintiff conferred with an attorney but decided not to pursue action.
As the United States Supreme Court observed in Rotella v. Wood (2000),528 U.S. 549, 555-556, 120 S.Ct. 1075:
 [I]n applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock. In the circumstance of medical malpractice, where the cry for a discovery rule is loudest, we have been emphatic that the justification for a discovery rule does not extend beyond the injury:
 "We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask." [Citation omitted.]
"A person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice." Id.
Here, unlike a plaintiff with a disease, such as asbestosis, mesothelioma, lung cancer, or squamous cell carcinoma of the larynx that may manifest itself many years after asbestos exposure, see O'Stricker at 86, plaintiff possessed the critical facts: he knew he had been hurt and knew who had inflicted the injury as early as 1976. "[C]onstructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. * * * A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." Flowers at 549. (Citations omitted.) (Emphasis sic.) Plaintiffs' contention that, under the facts of this case, the cognizable event occurred in November 1996, is not well-taken.
Because the cognizable event in this case occurred in 1976, not in November 1996, plaintiffs' medical malpractice action is not timely filed pursuant to former R.C. 2305.11(B)(1), which required a cause of action to be commenced within one year after the cause of action accrued.
Additionally, plaintiffs' loss of consortium claim was properly dismissed. "[I]n Ohio, in keeping with the rule of the overwhelming majority of jurisdictions in this country, the right of consortium, by its very definition, is a right which grows out of marriage, is incident to marriage, and cannot exist without marriage." Haas v. Lewis (1982),8 Ohio App.3d 136, 137. Marilyn Salyer was not married to plaintiff at the time plaintiff's medical malpractice action accrued in 1976. As a result, Marilyn Salyer does not have a valid claim for loss of consortium. See, e.g., Anderson v. Brush-Wellman, Inc. (1991),77 Ohio App.3d 657, 662-663 (spouse who married husband five years after husband was diagnosed with berylliosis determined not to have valid claim for loss of consortium); see, also, Eckert v. Jacobs (1992), Hamilton App. No. C-910445 ("We adopt the rule which holds that a claim for a spouse's loss of consortium exists only if the parties were married when the tortious misconduct occurred"). Moreover, even assuming arguendo that Marilyn Salyer had a valid claim for loss of consortium, because her loss of consortium claim accrued on the same date that plaintiff's medical malpractice claim began to run in 1976, her claim also was not timely filed and must be dismissed. See Hershberger, paragraph two of the syllabus; see, also, R.C. 2305.09(D).
Plaintiffs also contend the trial court's judgment violated plaintiffs' rights of due process and equal protection under the law. In Ohio, the General Assembly may limit the time an action may be brought in state courts. Cincinnati v. Thomas Soft Ice Cream, Inc. (1977), 52 Ohio St.2d 76,77. In Scott v. Borelli (1995), 106 Ohio App.3d 449, 456, this court noted that "[i]n Mominee [v. Scherbarth (1986), 28 Ohio St.3d 270,274-275], the Ohio Supreme Court noted, in dicta, that a one-year period within which to bring a medical malpractice claim was not per se unreasonable." Accordingly, by properly applying former R.C. 2305.11(B)(1) and 2305.09(D) as interpreted by relevant case law, the trial court did not violate plaintiffs' due process or equal protection rights.
Accordingly, we overrule plaintiffs' two assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.