ROTELLA *v.* WOOD ET AL.

No. 98–896.   Argued November 3, 1999—Decided February 23, 2000

550

SOUTER, J., delivered the opinion for a unanimous Court.

*Richard P. Hogan, Jr.*, argued the cause for petitioner. With him on the briefs were *Kevin Dubose, Richard W. Mithoff, Tommy Jacks,* and *Robert F. Andrews.*

*Charles T. Frazier, Jr.*, argued the cause for respondents. With him on the brief were *Debora B. Alsup, John H. Martin, Tom Renfro,* and *Joseph R. Cleveland, Jr.**

JUSTICE SOUTER delivered the opinion of the Court.

The commencement of petitioner's civil treble-damages action under the Racketeer Influenced and Corrupt Organizations Act (RICO) was timely only if the so-called "injury and pattern discovery" rule governs the start of the 4-year limitations period. We hold that it does not.

I

In February 1985, petitioner, Mark Rotella, was admitted to the Brookhaven Psychiatric Pavilion with a diagnosis of major depression. *Rotella* v. *Pederson,* 144 F. 3d 892, 894 (CA5 1998). He was discharged in 1986. In 1994, Brookhaven's parent company and one of its directors pleaded guilty to charges of criminal fraud perpetrated through improper relationships and illegal agreements between the company and its doctors. Rotella learned of the plea agreement that same year, and in 1997 he filed a civil RICO claim against respondents, a group of doctors and related business entities, in Federal District Court.[1]

---

*Daniel J. Popeo* and *Richard A. Samp* filed a brief for the Washington Legal Foundation et al. as *amici curiae* urging affirmance.

*Philip Allen Lacovara, Evan M. Tager,* and *Gary E. Hughes* filed a brief for the American Council of Life Insurance as *amicus curiae.*

[1] Rotella alleged that "a group of doctors and their related business entities . . . improperly conspir[ed] to admit, treat, and retain him at Brookhaven Psychiatric Pavilion for reasons related to their own financial interests rather than the patient's psychiatric condition." 147 F. 3d 438, 439 (CA5 1998). As injuries, he alleged, among other things, confinement

RICO, 18 U. S. C. §§ 1961–1968 (1994 ed. and Supp. III), makes it criminal "to conduct" an "enterprise's affairs through a pattern of racketeering activity," 18 U. S. C. § 1962(c), defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties, 18 U. S. C. § 1961(1) (Supp. III). "Pattern" is also a defined term requiring "at least two acts of racketeering activity . . . , the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U. S. C. § 1961(5).

RICO provides for civil actions (like this one) by which "[a]ny person injured in his business or property" by a RICO violation may seek treble damages and attorney's fees. 18 U. S. C. § 1964(c) (Supp. III). Rotella alleged such injury, in that respondents had conspired to admit, treat, and retain him at Brookhaven not for any medical reason but simply to maximize their profits. Respondents raised the statute of limitations as a defense and sought summary judgment on the ground that the period for bringing the civil action had expired before Rotella sued.

*Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.,* 483 U. S. 143, 156 (1987), established a 4-year limitations period for civil RICO claims. The District Court held that the period began when Rotella discovered his injury, which he concedes he did in 1986 at the latest. 147 F. 3d 438, 439 (CA5 1998). Under this "injury discovery" rule, the limitations period expired in 1990, and the District Court accordingly ordered summary judgment for respondents. Rotella appealed to the Fifth Circuit, arguing that the RICO limitations period does not begin to run until the plaintiff discovers (or should have discovered) both the injury and the pattern

---

for an excessive period because of the conspiracy to draw down his and other patients' insurance coverage, loss of a number of personal items, and fraudulent charges for unnecessary treatment. Brief for Petitioner 3; App. 20–24.

of racketeering activity. After the Fifth Circuit ruled against him, *ibid.*, we granted certiorari to address a split of authority among the Courts of Appeals on whether the limitations period is triggered in accordance with the "injury and pattern discovery" rule invoked by Rotella. 526 U. S. 1003 (1999). We now affirm.

## II

Given civil RICO's want of any express limitations provision for civil enforcement actions, in *Malley-Duff* we undertook to derive one and determined that the limitations period should take no account of differences among the multifarious predicate acts of racketeering activity covered by the statute. Although we chose a uniform 4-year period on a Clayton Act analogy, § 4B, as added, 69 Stat. 283, 15 U. S. C. § 15b, we did not decide when the period began to run, and the question has divided the Courts of Appeals.

Three distinct approaches emerged in the wake of *Malley-Duff.* Some Circuits, like the Fifth in this case, applied an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury. See, *e. g., Grimmett* v. *Brown,* 75 F. 3d 506, 511 (CA9 1996); *McCool* v. *Strata Oil Co.,* 972 F. 2d 1452, 1464–1465 (CA7 1992); *Rodriguez* v. *Banco Central Corp.,* 917 F. 2d 664, 665–666 (CA1 1990); *Bankers Trust Co.* v. *Rhoades,* 859 F. 2d 1096, 1102 (CA2 1988); *Pocahontas Supreme Coal Co.* v. *Bethlehem Steel Corp.,* 828 F. 2d 211, 220 (CA4 1987).

Some applied the injury and pattern discovery rule that Rotella seeks, under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity. See, *e. g., Caproni* v. *Prudential Securities, Inc.,* 15 F. 3d 614, 619–620 (CA6 1994); *Granite Falls Bank* v. *Henrikson,* 924 F. 2d 150, 154 (CA8 1991); *Bath* v. *Bushkin, Gaims, Gaines & Jonas,* 913 F. 2d 817, 820–821 (CA10 1990); *Bivens Gardens Office*

*Building, Inc.* v. *Barnett Bank*, 906 F. 2d 1546, 1554–1555 (CA11 1990).

The Third Circuit applied a "last predicate act" rule, see *Keystone Ins. Co.* v. *Houghton*, 863 F. 2d 1125, 1130 (CA3 1988). Under this rule, the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern.

In *Klehr* v. *A. O. Smith Corp.*, 521 U. S. 179 (1997), we cut the possibilities by one in rejecting the last predicate act rule. Since a pattern of predicate acts can continue indefinitely, with each separated by as many as 10 years, that rule might have extended the limitations period to many decades, and so beyond any limit that Congress could have contemplated. See *ibid.* Preserving a right of action for such a vast stretch of time would have thwarted the basic objective of repose underlying the very notion of a limitations period. See *id.*, at 189. The last predicate act rule was likewise at odds with the model for civil RICO, the Clayton Act, under which "[g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U. S. 321, 338 (1971); *Klehr, supra*, at 188.

The decision in *Klehr* left two candidates favored by various Courts of Appeals: some form of the injury discovery rule (preferred by a majority of Circuits to have considered it), and the injury and pattern discovery rule. Today, guided by principles enunciated in *Klehr*, we eliminate the latter.[2]

---

[2] We do not, however, settle upon a final rule. In addition to the possibilities entertained in the Courts of Appeals, JUSTICE SCALIA has espoused an "injury occurrence" rule, under which discovery would be irrelevant, *Klehr* v. *A. O. Smith Corp.*, 521 U. S. 179, 198 (1997) (opinion concurring in part and concurring in judgment), and our decision in *Klehr* leaves open the possibility of a straight injury occurrence rule. *Amicus* American Council of Life Insurance urges us to adopt this injury occurrence rule in this case, see Brief for American Council of Life Insurance

## III

We think the minority injury and pattern discovery rule unsound for a number of reasons. We start with the realization that under the provision recognizing the possibility of finding a pattern of racketeering in predicate acts 10 years apart, even an injury occurrence rule unsoftened by a discovery feature could in theory open the door to proof of predicate acts occurring 10 years before injury and 14 before commencement of litigation. A pattern discovery rule would allow proof of a defendant's acts even more remote from time of trial and, hence, litigation even more at odds with the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities. See, *e. g.*, *Klehr, supra,* at 187; *Malley-Duff,* 483 U. S., at 150, 156; *Wilson* v. *Garcia,* 471 U. S. 261, 270, 271 (1985).

How long is too long is, of course, a matter of judgment based on experience, and it gives us great pause that the injury and pattern discovery rule is an extension of the traditional federal accrual rule of injury discovery, and unwarranted by the injury discovery rule's rationale. Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here. *Klehr, supra,* at 191 (citing *Connors* v. *Hallmark & Son Coal Co.,* 935 F. 2d 336, 342 (CADC 1991), and 1 C. Corman, Limitation of Actions § 6.5.5.1, p. 449 (1991)). But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock. In the circumstance of medical malpractice, where the cry for a discovery rule is loudest, we have been emphatic that the justification for a discovery rule does not extend beyond the injury:

> "We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his

as *Amicus Curiae* 5–14, but the parties have not focused on this option, and we would not pass upon it without more attentive advocacy.

ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask." *United States* v. *Kubrick*, 444 U. S. 111, 122 (1979).

A person suffering from inadequate treatment is thus responsible for determining within the limitations period then running whether the inadequacy was malpractice.

We see no good reason for accepting a lesser degree of responsibility on the part of a RICO plaintiff. It is true, of course, as Rotella points out, that RICO has a unique pattern requirement, see *Malley-Duff, supra,* at 154 ("[T]he heart of any RICO complaint is the allegation of a *pattern* of racketeering"); *H. J. Inc.* v. *Northwestern Bell Telephone Co.,* 492 U. S. 229, 236 (1989) (referring to "RICO's key requirement of a pattern of racketeering"). And it is true as well that a pattern of predicate acts may well be complex, concealed, or fraudulent. But identifying professional negligence may also be a matter of real complexity, and its discovery is not required before the statute starts running. *Kubrick, supra,* at 122, 124. Although we said that the potential malpractice plaintiff "need only ask" if he has been wronged by a doctor, considerable enquiry and investigation may be necessary before he can make a responsible judgment about the actionability of the unsuccessful treatment he received. The fact, then, that a considerable effort may be required before a RICO plaintiff can tell whether a pattern of racketeering is demonstrable does not place him in a significantly different position from the malpractice victim. A RICO plaintiff's

ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treatment decisions or of prevailing standards of medical practice.

Nor does Rotella's argument gain strength from the fact that some patterns of racketeering will include fraud, which is generally associated with a different accrual rule; we have already found the connection between civil RICO and fraud to be an insufficient ground for recognizing a limitations period beyond four years, *Malley-Duff, supra,* at 149, and the lenient rule Rotella seeks would amount to backsliding from *Malley-Duff.*

What is equally bad is that a less demanding basic discovery rule than federal law generally applies would clash with the limitations imposed on Clayton Act suits. This is important because, as we have previously noted, there is a clear legislative record of congressional reliance on the Clayton Act when RICO was under consideration, see *Sedima, S. P. R. L.* v. *Imrex Co.,* 473 U. S. 479, 489 (1985), and we have recognized before that the Clayton Act's injury-focused accrual rule was well established by the time civil RICO was enacted. *Klehr,* 521 U. S., at 189. In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act. Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity.[3] *Id.,* at 187

---

[3] This objective of encouraging prompt litigation to combat racketeering is the most obvious answer to Rotella's argument that the injury and pattern discovery rule should be adopted because "RICO is to be read

(citing *Malley-Duff*, 483 U. S., at 151) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate"). The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better. It would, accordingly, be strange to provide an unusually long basic limitations period that could only have the effect of postponing whatever public benefit civil RICO might realize. The Clayton Act avoids any such policy conflict by its accrual rule that "[g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business," *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U. S., at 338, and the Clayton Act analogy reflects the clear intent of Congress to reject a potentially longer basic rule under RICO.

In sum, any accrual rule softened by a pattern discovery feature would undercut every single policy we have mentioned. By tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete,[4] as this case shows. Rotella does not deny that

---

broadly" and " 'liberally construed to effectuate its remedial purposes,' " *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 497–498 (1985) (quoting Pub. L. 91–452, §904(a), 84 Stat. 947).

[4] Some Circuits apply injury and pattern discovery out of fear that when the injury precedes a second predicate act, the limitations period might otherwise expire before the pattern is created. *E. g., Granite Falls Bank* v. *Henrikson*, 924 F. 2d 150, 154 (CA8 1991). Respondents argue that this overlooks the cardinal principle that a limitations period does not begin to run until the cause of action is complete. *Rawlings* v. *Ray*, 312 U. S. 96, 98 (1941); see also *United States* v. *Lindsay*, 346 U. S. 568, 569 (1954); *Clark* v. *Iowa City*, 20 Wall. 583, 589 (1875).

The quandary is hypothetical here; Rotella does not dispute that his injury in 1986 completed the elements of his cause of action. Hence, we

he knew of his injury in 1986 when it occurred, or that his civil RICO claim was complete and subject to suit at that time. But under Rotella's rule, the clock would have started only in 1994, when he discovered the pattern of predicate acts (his assumption being that he could not reasonably have been expected to discover them sooner). A limitations period that would have begun to run only eight years after a claim became ripe would bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability. Whatever disputes may arise about pinpointing the moment a plaintiff should have discovered an injury to himself would be dwarfed by the controversy inherent in divining when a plaintiff should have discovered a racketeering pattern that might well be complex, concealed or fraudulent, and involve harm to parties wholly unrelated to an injured plaintiff. The fact, as Rotella notes, that difficulty in identifying a pattern is inherent in civil RICO, see *H. J. Inc.*, 492 U. S., at 235, n. 2 (collecting cases), only reinforces our reluctance to parlay the necessary complexity of RICO into worse trouble in applying its limitations rule. Cf. *Wilson*, 471 U. S., at 270 (discussing need for firmly defined, easily applied rules). A pattern discovery rule would patently disserve the congressional objective of a civil enforcement scheme parallel to the Clayton Act regime, aimed at rewarding the swift who undertake litigation in the public good.

Rotella has two remaining points about which a word should be said. We have already encountered his argument that differences between RICO and the Clayton Act render their analogy inapt, and we have explained why neither the RICO pattern requirement nor the occurrence of fraud in

---

need not and do not decide whether civil RICO allows for a cause of action when a second predicate act follows the injury, or what limitations accrual rule might apply in such a case. In any event, doubt about whether a harm might be actionable before a pattern is complete is a weak justification for the cost of a general pattern discovery rule.

RICO patterns is a good reason to ignore the Clayton Act model, see *supra*, at 556–557. Here it remains only to respond to Rotella's argument that we ourselves undercut the force of the Clayton Act analogy when we held that RICO had no racketeering injury requirement comparable to the antitrust injury requirement under the Clayton Act, see *Sedima*, 473 U. S., at 495. This point not only fails to support but even cuts against Rotella's position. By eliminating the complication of anything like an antitrust injury element we have, to that extent, recognized a simpler RICO cause of action than its Clayton Act counterpart, and RICO's comparative simplicity in this respect surely does not support the adoption of a more protracted basic limitations period.

Finally, Rotella returns to his point that RICO patterns will involve fraud in many cases, when he argues that unless a pattern discovery rule is recognized, a RICO plaintiff will sometimes be barred from suit by Federal Rule of Civil Procedure 9(b), which provides that fraud must be pleaded with particularity. While we will assume that Rule 9(b) will exact some cost, we are wary of allowing speculation about that cost to control the resolution of the issue here. Rotella has presented no case in which Rule 9(b) has effectively barred a claim like his, and he ignores the flexibility provided by Rule 11(b)(3), allowing pleadings based on evidence reasonably anticipated after further investigation or discovery. See, *e. g., Corley* v. *Rosewood Care Center, Inc. of Peoria,* 142 F. 3d 1041, 1050–1051 (CA7 1998) (relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim). It is not that we mean to reject Rotella's concern about allowing "blameless ignorance" to defeat a claim, *Urie* v. *Thompson*, 337 U. S. 163, 170 (1949); we simply do not think such a concern should control the decision about the basic limitations rule. In rejecting pattern discovery as a basic rule, we do not unsettle the understanding that federal statutes of limitations are generally subject to equitable principles of tolling, see *Holm-*

*berg* v. *Armbrecht*, 327 U. S. 392, 397 (1946), and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty, complementing Federal Rule of Civil Procedure 11(b)(3). See *ibid.;* see generally *Klehr*, 521 U. S., at 192–193 (noting distinctions between different equitable devices). The virtue of relying on equitable tolling lies in the very nature of such tolling as the exception, not the rule.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*