**Rodney SENIGAUR**

v.

**FORD MOTOR COMPANY.**

No. 1:01–CV–243.

United States District Court, E.D. Texas, Beaumont Division.

July 23, 2002.

Edgar F. Heiskel, III, Michie Hamlett Lowry Rasmussen & Tweel, Charlottesville, VA, James P. Neill Pottsboroa, TX, A. Camden Lewis, Mark W. Hardee, Lewis Babcock & Hawkins, Columbia, SC, for plaintiff.

Michael Wayne Eady, William Leonard Mennucci, Brown McCarroll & Oaks Haratline, Austin, TX, for defendant.

### MEMORANDUM ORDER

COBB, District Judge.

According to the plaintiffs' attorneys, this case presents a bleak picture of lawyers, "expert witnesses," and corporate America. Plaintiff Rodney Senigaur was seriously injured in a Ford Bronco rollover on June 27, 1991. He and his parents sued Ford Motor Company in this court in October 1993, and settled the suit for a substantial (but secret) amount of money.

It is alleged that Ford employed in the 1970s and 1980s a person with extensive engineering background, David Bickerstaff, skilled in his craft, prior to the time Ford Company started selling the Bronco to the public, Bickerstaff had serious misgivings about the high center of gravity in the soon-to-be released Bronco series of SUV's. It is alleged that the high center of gravity would likely make the Ford SUV· Bronco susceptible to roll-over accidents.

Bickerstaff apparently voiced these opinions to his superiors in Ford's organization, as well as writing his reservations to others in the Ford hierarchy. It is charged that his premonitions or warnings were not heeded and somewhere in the neighborhood of 200–300 lawsuits were brought following numerous Bronco rollover accidents.

Meanwhile, Bickerstaff had left Ford permanently and opened his own engineering and consulting company. Eventually, his written works were uncovered in many federal courts in numerous states.

Plaintiffs say that in return for fees of $4000–$5000 a day, he recanted and testified, both in person and by deposition, in a plethora of cases that his original theories, reservations, and doubts were erroneous, and that it (high center of gravity) was merely one of the items which could produce a higher rate of roll-over accidents, and a very unimportant one at that. Some of the evidence which plaintiffs bring to this court about his turn-around netted him and his Bickerstaff Consultants several millions of dollars in fees, reports, and the like.

Senigaur's suit was settled, but not for as much money as his present lawyers now say it was worth.

Plaintiffs further allege that Ford's counsel in Phoenix, Arizona, and many other venues knew of Bickerstaff's arrangement with Ford, but attempted to conceal, hide, and keep it secret. Plaintiffs now seek by various theories to obtain additional damages they believe plaintiffs are (and were) entitled to had they known about the sale of the benign reports were in fact false. Ford, and its attorneys, plaintiffs say (at least some of Ford's attorneys) knowingly used the new sanitized Bickerstaff organization reports to save their client Ford as much money as possible.

All of this came out in open court in 1995 in a case before Judge John T. Copenhaver, Chief Judge of West Virginia, when during a Bronco trial before him he made on the record then before him, an evidentiary ruling and held that a civil conspiracy existed from 1990 to 1995, and that certain statements and writings were made during and in furtherance of the conspiracy, and admitted the writings and communications in evidence before the jury. That case, *Brenda R. Goff v. Ford Motor Co.*, resulted in a finding for the plaintiffs.

Unfortunately for Senigaur, his then attorney or attorneys had ferreted out the $5000 per day agreement by use of documentary evidence before the Senigaurs settled their case for an agreed upon "confidential" amount, and signed and agreed to the most stringent, binding, and global release of Ford, et al, which could be drawn by corporate lawyers skilled in their craft, which began with all events in young Senigaur's life, and prior thereto, "since the beginning of time."[1] Bickerstaff, in 1992 in a trial in the Northern District of New York before the Honorable Thomas McEvoy, one of plaintiff Senigaur's attorneys had full knowledge of Bickerstaff's $5000 a day arrangement, although not the letter from the Phoenix attorneys to Bickerstaff setting forth the arrangement.

Senigaur's attorneys, Russell L. Cook of Houston, Texas, and Tab Turner of Little Rock, Arkansas, and the Senigaurs signed the release on October 22, 1993. This court entered the order of dismissal November 30, 1993.

Tab Turner, one of the lawyers for various plaintiffs in various Bronco rollover cases, and associated with Russell Cook in similar cases both in New York and Texas, testified by deposition in other cases that plaintiffs' lawyers discovered Bickerstaff's change of heart or mind before settling in the Northern District of New York, but did not have the later discovered letters between Ford's Phoenix lawyers and Bickerstaff, but had actual knowledge of the arrangement.

■ Plaintiffs allege fraud by Ford in the Bickerstaff lucrative arrangement, and now seek additional damages. However, plaintiffs do not seek to set aside the release nor do they tender any settlement proceeds (still secret) to Ford in their effort to collect more damages. The plaintiffs cite no cases, federal or Texas, where the person defrauded merely by alleging fraud and, even if proven, increase the damages without first setting aside the fraudulent agreement, and the court has yet to find such a case in its own research.

One of the reasons for granting summary judgment for the defendant is that the plaintiffs have not asked that the settlement contract be set aside, nor have they tendered or offered to return the monies received for the release.

This is not the only case in a Texas federal court where plaintiffs have sought additional money from Ford for Bickerstaff's alleged perfidy. In the United States District Court for the Western District of Texas, Judge Sparks granted Ford's motion for summary judgment on May 22, 2002, in *Steven Joy v. Ford Motor Co.*, No., A–01–CA–271–SS in an extremely well reasoned opinion.

The day before, May 21, 2002, Judge Robinson granted Ford's motion for summary judgment in *Curtsinger v. Ford Motor Co.*, Cause No. 2:01–CV–180–J in the Amarillo Division of the Northern District of Texas, and filed an excellent opinion. Those two judges reached the same result

---

1. Which according to eminent professors at Princeton University was about 15 billion years ago, "more or less", when the "Big Bang" probably occurred.

on successive days, apparently independently of each other. A similar case before Judge Seay in Oklahoma resulted in a summary judgment for Ford. *Kennedy v. Ford Motor Co.,* Civ. No. 92–395–S, U.S. District Court, E.D. Oklahoma, Nov. 28, 2001.

The same result is now reached by this court, for the same reasons set forth by those judges.

■ Plaintiffs' claims are governed by either a two-year or a four-year limitations period,[2] which begins to accrue when "the injured party discovers, or in the exercise of reasonable diligence, should have discovered, the alleged fraud." *Kansa Reinsurance Co. Ltd. v. Congressional Mortgage Corp. of Texas,* 20 F.3d 1362, 1369 (5th Cir.1994) (stating that a cause of action for fraud under Texas law "is generally considered to accrue either when the fraud giving rise to the fraud claim are discovered or might reasonably be discovered through reasonable diligence"); *La Porte Construction Co. v. Bayshore National Bank,* 805 F.2d 1254, 1256 (5th Cir. 1986) (applying "injury discovery" rule to RICO claim for purpose of determining accrual); "Whether reasonable diligence was exercised to discover the fraud is usually a question of fact unless the evidence is such that reasonable minds may not differ as to its effect; then it becomes a question of law." *Wakefield v. Bevly,* 704 S.W.2d 339, 346 (Tex.App.—Corpus Christi 1985, no writ).

By plaintiffs' own admission and by admission of their counsel, plaintiffs knew or reasonably should have known about the alleged fraud that they complain of herein well before they settled the underlying case on October 27, 1993. Plaintiffs state that their entire case is based "upon the fact that David J. Bickerstaff, a Ford engineer who criticized the stability of the Bronco II while he worked at Ford developing it, illegally offered to change his testimony for money by having Ford hire him to 'prepare himself' to testify 'in Ford's favor.'"

Plaintiffs admit that they and their attorneys "were well aware by the time they settled that Bickerstaff was now testifying differently ... chang[ing] his testimony from suggesting that there were stability index deficiencies of the Bronco II to saying that there were no deficiencies." Plaintiffs also admit that Bickerstaff's "testimony mutated such, that he went from being listed by plaintiff's lawyers as a witness which supported their claims against Ford, to Ford's star witness."

Plaintiffs still maintain that they "settled the underlying Bronco II Rollover case for a fraction of its true value" because they did not know "about the Bickerstaff memo and payment for perjured testimony." As discussed in further detail in Ford's motion, however, counsel in the underlying cases, Tab Turner ("Turner"), testified that he knew as far back as 1991 or 1992, as many as three years before the underlying cases settled, that Bickerstaff's company was getting paid hundreds of thousands of dollars by Ford and that this money was probably influencing Bickerstaff to change his testimony. Turner testified that he knew everything in the Bickerstaff memo in 1993, before this plaintiffs' case was settled.

This suit is groundless. It is premised upon allegations of misrepresentation, inducement, and reliances that are affirma-

---

**2.** A two-year limitation period applies to plaintiffs' civil conspiracy claim. *Connell v. Connell,* 889 S.W.2d 534, 540 (Tex.App.—San Antonio 1994, writ denied). Plaintiffs' fraud claims are governed by a four-year limitation period, Tex.Civ.Prac. & Remedy Code § 16.004, as is plaintiffs' RICO cause of action. *Rotella v. Wood,* 528 U.S. 549, 552, 120 S.Ct. 1075, 1079, 145 L.Ed.2d 1047 (2000).

tively denied by the very person on whom plaintiff depended for advice of his attorneys, and the Release plainly contemplated, disposed of, and protected against potential future litigation such as this.

Because plaintiffs have not sued to set aside either the Settlement Agreement and Release (the "Release"), the only option for the court at this point is to render judgment according to the terms of the Release and dismiss plaintiffs' claims.

This case is barred by the statute of limitations, and by the actual discovery of the fraud over ten years ago and under the expansive and extensive terms of the release. Ford's motion for summary judgment is GRANTED.