DECISION.
{¶ 1} The plaintiff-appellant, Tri-State Computer Exchange, Inc., appeals from the order of the trial court granting the motions to dismiss filed under Civ.R. 12(B)(6) by the defendants-appellees, Earl Eugene Burt, Debbie Burt, Jody Bradley, and Sally Wilson. Tri-State had brought claims against all four defendants, alleging fraud, breach of fiduciary duty, civil RICO violations under R.C. 2923.32 and 2923.34, tortious interference with business relationships, abuse of process, breach of contract, and conspiracy. Tri-State had also alleged that certain criminal conduct by the defendants-appellees subjected them to civil liability under R.C. 2307.60. The trial court ruled that all of the claims were subject to dismissal under the applicable statute of limitations or were otherwise infirm on the pleadings.
 {¶ 2} In its sole assignment of error, Tri-State now argues that the trial court erred by (1) requiring it to put in its complaint information to show when it had sufficient notice that it had legal claims against the defendants-appellees to trigger the running of the applicable statutes of limitations; (2) rejecting its request to amend its complaint to set forth facts necessary to show when it had sufficient notice; and (3) dismissing its claims with prejudice. For the following reasons, we affirm.
 {¶ 3} This is a tale of two bitterly feuding computer enterprises, the high-tech equivalent of the Hatfields and the McCoys. The first company in the patch was Tri-State, a computer-reselling company owned by John Grinstead, Jr. One of the shareholders in the company, and the company's landlord at its Glendale offices, was Earl Eugene Burt. Burt's daughter, Debbie Burt, worked for Tri-State as its office manager. Jody Bradley, the man with whom Debbie Burt lived, also worked for Tri-State.
 {¶ 4} According to Tri-State, sometime in 1993 Debbie Burt, while still in its employ, began recruiting Tri-State employees to go work for the new computer-reselling business that she and her father and Jody Bradley were planning to start, and that later began doing business as Computer Emporium. Around the same time, on July 30, 1993, Bradley claimed to have suffered an on-the-job injury at Tri-State and began to wear a back brace to work. Bradley sought treatment for the injury at Cincinnati Chiropractic Clinic. The billing clerk at the clinic was none other than Sally Wilson, Earl Burt's daughter and Debbie Burt's sister.
 {¶ 5} Later that fall, Tri-State relocated to Fairfield, Ohio, after (its complaint alleged) Earl Burt suddenly decided to raise the rent. Debbie Burt and Jody Bradley, however, did not move with the company, but left Tri-State's employ to open and operate Computer Emporium, Inc., with Earl Burt's financial backing. To add insult to injury, Computer Emporium began operating out of Tri-State's former offices — of which Earl Burt remained the lessor. According to Tri-State, the two computer companies were essentially the same and entered into direct competition.
 {¶ 6} On January 6, 1994, Grinstead bought out Earl Burt's interest in Tri-State, thus severing ties with the Burt family. That same month, coincidentally, Jody Bradley filed a claim for workers' compensation against his former employer, Tri-State, for the injury he had allegedly sustained on July 30, 1993. The Industrial Commission denied the claim. Bradley sought judicial review, and a jury trial was held in the Warren County Court of Common Pleas in December 1999, some six years after the alleged accident. During the trial Bradley alleged that Tri-State was a noncomplying employer, meaning that it had not paid its workers' compensation premiums.
 {¶ 7} The jury returned a verdict denying Bradley participation in the workers' compensation fund. The Twelfth Appellate District affirmed the trial court's judgment in its entirety. Bradley v. Administrator
(Sept. 25, 2000), 12th Dist. No. CA2000-01-012.
 {¶ 8} According to Tri-State, testimony adduced at the December 1999 trial of Bradley's workers' compensation claim convinced it that Bradley and Eugene and Debbie Burt had "manufactured" the claim in order to economically disadvantage the company and give Computer Emporium a competitive advantage. According to Tri-State, Bradley manufactured the allegation that it was a noncomplying employer to subject the company to unlimited damages for which it would not have had any insurance protection. Tri-State argues that a key element of this plot was Debbie Burt's willful failure to pay the company's workers' compensation premiums when she was still acting as Tri-State's office manager. This failure, Tri-State insists, was a deliberate act of corporate sabotage.
 {¶ 9} Tri-State filed its present lawsuit on December 21, 2001. In its complaint, Tri-State set forth discrepancies in the trial witnesses' testimony regarding the particulars of the accident, as well as discrepancies concerning Sally Wilson's dating of the workers' compensation form. It is upon these discrepancies and the timing of the claim itself (which was filed within days after Grinstead bought out Earl Burt) that Tri-State based its conspiracy theory.
 {¶ 10} As has already been noted, the trial court dismissed all of Tri-State's claims against the defendants-appellees under Civ.R. 12(B)(6), finding that the vast majority were barred by the applicable statutes of limitations. Commenting on the nature of the suit, the trial court observed, "The Plaintiff has filed the proverbial, `everything but the kitchen sink' complaint regarding an ongoing legal (and personal) battle between the parties. The battle began in 1993. The seeds of the protracted litigation were planted in 1993. The basis of any alleged cause of action is firmly rooted in conduct in 1993 and/or 1994. The Plaintiffs knew of such alleged conduct back in 1993/1994. They should have filed any lawsuit they wished prior to * * * December 21, 2001. The statute of limitations and rule 12(B)(6) were enacted by the legislature to provide a basis to stop lawsuits such as the lawsuit at hand."
 {¶ 11} We review de novo dismissals by the trial court under Civ.R. 12(B)(6). In determining the appropriateness of a dismissal, we, like the trial court, are constrained to take all the allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and then to decide if the plaintiff has stated any basis for relief. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192,532 N.E.2d 753. A dismissal should be granted only if the plaintiff can prove no set of facts that would entitle it to relief. O'Brien v. Univ.Community Tenants Union, Inc. (1975), 41 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
 {¶ 12} As Tri-State points out, a dismissal on the pleadings under Civ.R. 12(B)(6) is reserved for the rare case that cannot possibly succeed, and it should not be granted simply because the court many have reservations about the plaintiff's ultimate chance of success on the merits. Leichtman v. WLW Jacor Communications, Inc. (1994),92 Ohio App.3d 232, 234, 634 N.E.2d 697. Since statute-of-limitation issues generally involve mixed questions of fact and law, i.e., when the injury occurred or when it should have been discovered, Civ.R. 12(B)(6) is generally not the appropriate vehicle for challenging a complaint on this ground. See Davis v. Allen (Jan. 18, 2002), 1st Dist. Nos. C-010165, C-010202, and C-10260. Still, where it is evident that, under any scenario, the bell has rung, the rule can be used to dismiss on the basis that the claims are time-barred. Velotta v. Leo PetronzioLandscaping, Inc. (1982), 69 Ohio St.2d 376, 433 N.E.2d 141, and Scheerv. Air-Shields, Inc. (1979), 61 Ohio App.2d 205, 401 N.E.2d 478. With these principles in mind, we turn to each of Tri-State's various claims, of which, as the trial court noted, there were many.
1. Breach of Fiduciary Duty and Conspiracy to Commit Breach ofFiduciary Duty.
 {¶ 13} These separate causes of action alleged that the defendants-appellees had breached and/or conspired to breach their respective fiduciary duties of good faith, fair dealing, and loyalty owed to Tri-State as shareholders, employees or agents. The trial court ruled, and we agree, that the pleadings clearly evidenced that the alleged breach began in 1993, under circumstances that had to have been known to Tri-State at the time. Certainly any alleged breach by the defendants-appellees of the duties they owed to Tri-State would have been patent when Tri-State moved to its new location and the Burts and Bradley stayed on to open up their own company. Thus, the applicable four-year statute of limitations, see R.C. 2305.09(D), clearly rendered these claims time-barred when Tri-State filed its complaint in December 2001.
2. RICO and Conspiracy to Violate Civil RICO — R.C. 2923.32 andR.C. 2923.34
 {¶ 14} Causes of action under the Ohio civil RICO statute are governed by a five-year statute of limitations. R.C. 2923.34. Ohio law is lacking, however, as to when the statute of limitations begins to run on an alleged civil RICO violation. Accordingly, we refer to federal decisions for guidance. See, e.g., U.S. Demolition Contracting,Inc. v. O'Rourke Constr. Co. (1994), 94 Ohio App.3d 75, 83, 640 N.E.2d 285. Federal courts generally apply an "injury discovery rule," meaning that the statute begins to run when the plaintiff knew or should have known of the injury underlying his or her cause(s) of action. See, e.g., Pincayv. Andrews (C.A.9, 2001), 238 F.3d 1106, 1109. As Tri-State acknowledges, the United States Supreme Court has rejected a rule that would delay triggering the statute until the plaintiff becomes aware of both the injury and that the injury is part of a larger pattern of injurious conduct. See Rotella v. Wood (2000), 528 U.S. 549,120 S.Ct. 1075.
 {¶ 15} Tri-State argues that it could not have discovered the injury to it early on because it lacked understanding of the full "nature and magnitude" of the defendants-appellees' designs against it. According to Tri-State, it was not until Bradley forced his workers' compensation claim to trial that the discrepancies in his testimony and his false allegation that Tri-State was a noncomplying employer finally brought home to it that the defendants-appellees were seeking to damage the company. Having reviewed the complaint, however, and giving Tri-State the benefit of all inferences, we simply cannot accept the logic of its argument that the trial of the workers' compensation claim disclosed some element of a plot that was not discoverable before. As noted, the Burts and Bradley had rather blatantly been acting against the best interests of Tri-State in 1993 and 1994. Their disloyalty to the company had to have been known to Tri-State, and when Bradley filed his workers' compensation claim so soon after Grinstead bought out Earl Burt, an alarm should have gone off. At that point, the injurious conduct had already begun to take place, and certainly Tri-State was obliged to ask itself if any aspect of the injury inflicted upon the company by the Burts and Bradley was actionable. Instead, although hearings began on the workers' compensation claim in 1994, Tri-State appears to have adopted a wholly defensive strategy, waiting for the litigation surrounding the workers' compensation claim to play out. The problem with this strategy, however, was that the statute of limitations on any potential RICO violations had begun ticking in 1994, when the injurious conduct occurred, and when, in our view, any pattern or enterprise should have become evident. The workers' compensation trial did not conclude until 1999. Tri-State then waited an additional 18 months after the trial was over to file suit. By that time, we conclude, it was too late.
3. Fraud and Conspiracy to Commit Fraud
 {¶ 16} A similar analysis applies to the causes of action for fraud and conspiracy to commit fraud. The analysis is a bit finer, however, because part of Tri-State's argument is that fraud was committed at the workers' compensation trial, as disclosed by the testimony challenging Bradley's version of events surrounding his alleged occupational injury. Although the point is finer, it still strikes us that the actionable fraud occurred, if at all, at the time Bradley filed the workers' compensation in 1994, and that all the later trial testimony did was to illuminate the nature of the fraud.
 {¶ 17} The four-year statute of limitations for a fraud claim begins to run when the plaintiff discovers, or should have discovered, the complained-of injury. See Investors REIT One v. Jacobs (1989),46 Ohio St.3d 176, 546 N.E.2d 206. The question in this case becomes, then, was the fraud not discoverable until the conflicting testimony was adduced at the trial? Tri-State argues that it should have been at least entitled to get beyond the pleadings to show that this was true. But the complaint itself demonstrated that all Tri-State had to point to are discrepancies in the trial testimony, some of which arose from Grinstead offering a different version of events than Bradley. Grinstead's version of how the accident occurred, or did not occur, however, would certainly have been known by him in 1994. And any fraud involved in the claim would seemingly have been discoverable early on in the process of review by the Industrial Commission. The surprise Tri-State claims as a result of the trial testimony does not ring true. While Tri-State may have heard testimony at the trial that made the fraud appear more egregious, or provable, inspiring it to sue on its own behalf, this does not obviate the fact that any fraud that occurred was reasonably discoverable in 1994 and throughout 1995.
4. Abuse of Process and Conspiracy to Commit Abuse of Process
 {¶ 18} Having still not expended the claims leveled by Tri-State, we turn next to its abuse-of-process and conspiracy-to-commit-abuse-of-process claims. The complaint alleged that Bradley's workers' compensation claim was based upon "false" and "manufactured" evidence. The applicable statute of limitations was four years. R.C. 2305.09; Yakelvich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph three of the syllabus. The trial court determined that the four-year period began to run from either January 10, 1994, the date the claim was filed, or at least by August of that year, when hearings before the Industrial Commission began. Because the claim was not dependent upon the resolution of an underlying criminal proceeding, as is the case in a claim of malicious prosecution, the action began to accrue on the date of the allegedly tortious conduct. See Read v. Fairview Park (2002),146 Ohio App.3d 15, 764 N.E.2d 1079, and Aaron v. Venator Group, a/k/aFootquarters Shoe Store (Feb. 8, 2002), 6th Dist. No. E-01-023. We agree with the trial court, therefore, that the claim accrued from the time Bradley first filed the allegedly manufactured workers' compensation in 1994, and that the statute of limitations had expired by the time Tri-State eventually filed suit.
5. Breach and Contract and Conspiracy to Breach Contract
 {¶ 19} Because Tri-State failed to allege the existence of a written contract, the trial court correctly determined that the applicable statute of limitations was six years. R.C. 2305.07. The court further reasoned that any cause of action sounding in contract would have been based on conduct dating back to 1993, when the Burts and Bradley left Tri-State to form Computer Emporium. No other possible breach of contract was alleged or could be inferred from the pleadings. Accordingly, we agree with the trial court that Tri-State's claims sounding in contract were time-barred.
6. Tortious Interference with Business Relationships and Conspiracy toCommit Tortious Interference
 {¶ 20} These claims were also controlled by a four-year statute of limitations. R.C. 2305.09(D). The trial court reasoned that any alleged tortious interference became obvious as early as 1993, when the Burts and Bradley left Tri-State to begin their own company. Paragraph ten of the complaint also indicated that Tri-State was aware that prior to their defection they were attempting to talk other company employees into leaving with them. We agree with the trial court, therefore, that these claims were time-barred.
7. Respondeat Superior
 {¶ 21} The trial court properly determined that these were derivative claims and were subject to dismissal along with the claims upon which they depended.
8. Recovery for Damage Caused by a Criminal Act under R.C. 2307.60
 {¶ 22} The trial court did not dismiss this claim on the basis of the statute of limitations, but, rather, because Tri-State's complaint failed to allege that the defendants-appellees had been convicted of any crime. We affirm the trial court's ruling on the basis of Ivanic v.Cleveland Elect. Illum. Co. (Sept. 16, 1993), 8th Dist. No. 63372, andHite v. Brown (1995), 100 Ohio App.3d 606, 654 N.E.2d 452.
 {¶ 23} In sum, we hold that it was patent from the dates in the complaint that Tri-State had, as early as 1993 and 1994, begun to suffer the injury for which it finally sued in December 2001 — seven or eight years later. While Tri-State is correct that a complaint does not require a detailed narrative, and that Civ.R. 12(B)(6) is generally not a favored means of disposing of a case on statute-of-limitation grounds, when the rare complaint sets forth on its face a chronology that affirmatively establishes accrual dates outside the applicable statutes, then a motion to dismiss on the pleadings may be successfully employed. See Goad v. Cuyahoga Cty. Bd. of Commrs. (1992), 79 Ohio App.3d 521,607 N.E.2d 878, and Steiner v. Steiner (1993), 85 Ohio App.3d 513,620 N.E.2d 152. While Tri-State argues that it was the victim of a hidden plot by the defendants-appellees, slowly becoming manifest and culminating in the trial of 1999, it strikes us, as it did the trial court, that the company faced an open mutiny back in 1993 and 1994, and that the injurious machinations of the defendants-appellees were clearly known, or should have been known, to the company at that time.
 {¶ 24} Tri-State next argues, alternatively, that the trial court should have not dismissed its complaint with prejudice, or that the court should have at least allowed it to amend its complaint to provide additional information with respect to when it had first discovered the defendants-appellees' alleged misdeeds. The defendants-appellees assert, on the other hand, that Tri-State never specifically requested leave to amend its complaint, and that even if it had, the trial court acted within its discretion to dismiss the original complaint with prejudice because of the obvious running of the applicable statutes of limitations. We agree with the defendants-appellees.
 {¶ 25} Before a trial court grants a Civ.R. 12(B)(6) motion, it should generally grant leave to amend the complaint; however, where the court determines that no further allegations or statements of facts consistent with the pleadings can cure the defect, the court may, in its discretion, attach prejudice to the dismissal. See State ex rel. Hansonv. Guernsey Cty. Bd. of Commrs. (1992), 65 Ohio St.3d 545, 549,605 N.E.2d 378. Here, unless Tri-State were to have disavowed the knowledge it had, or should have had, of the defendants-appellees' actions in 1993 and 1994, which would not have been consistent with its present complaint, the conclusion that the statutes of limitations had run was unalterable. Therefore, we cannot agree with the company that the trial court abused its discretion in attaching prejudice to the dismissal.
 {¶ 26} Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., Gorman and Winkler, JJ.