NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1417, -1462

HEUFT SYSTEMTECHNIK GMBH,

Plaintiff-Cross Appellant,

v.

INDUSTRIAL DYNAMICS CO., LTD.,

Defendant-Appellant,

and

STEVE CALHOUN,

Defendant.

Richard W. Young, Drinker Biddle & Reath LLP, of Chicago, Illinois, argued for plaintiff-cross appellant.  With him on the brief were R. Michael Duffy, David A. Frey and Carrie A. Beyer. Of counsel on the brief was Jeffrey G. Killian, of Washington, DC. Of counsel was James S. Blackburn, Arnold & Porter, LLP, of Los Angeles, California.

Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP, of Irvine, California, argued for defendant-appellant. With him on the brief were Karen Vogel Weil, Steven J. Nataupsky, Sheila N. Swaroop, Matthew S. Bellinger and Marko R. Zoretic.

Appealed from: United States District Court for the Central District of California

Judge George P. Schiavelli

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1417, -1462

HEUFT SYSTEMTECHNIK GMBH,

Plaintiff-Cross Appellant,

v.

INDUSTRIAL DYNAMICS CO., LTD,

Defendant-Appellant,

and

STEVE CALHOUN,

Defendant.

Appeals from the United States District Court for the Central District of California in case no. 05-CV-6299, Judge George P. Schiavelli.

———————————————

DECIDED: June 25, 2008

———————————————

Before MICHEL, Chief Circuit Judge, NEWMAN and LINN, Circuit Judges.

LINN, Circuit Judge.

Industrial Dynamics Co., Ltd. ("IDC") appeals from a final judgment of the United States District Court for the Central District of California. Heuft Systemtechnik GmbH v. Indus. Dynamics Co., No. 05-CV-6299 (C.D. Cal. July 6, 2007). The judgment, entered following a jury trial, adjudged IDC liable for infringement of U.S. Patent No. 6,298,974 ("the '974 patent"). IDC challenges the district court's claim construction and the denial of its motion for judgment of non-infringement as a matter of law. Heuft Systemtechnik

GmbH ("Heuft") cross-appeals from the final judgment. Heuft challenges the district court's exclusion of damages evidence and its refusal to grant a permanent injunction.

We conclude that the district court incorrectly construed the claim terms at issue. Under the correct constructions, it is undisputed that IDC does not infringe the claims of the '974 patent. As a result, we reverse the district court's denial of IDC's motion for judgment of non-infringement as a matter of law and remand with instructions to enter judgment in favor of IDC. We do not reach the issues raised in Heuft's cross-appeal.

## I. BACKGROUND

Heuft designs, manufactures, and sells equipment used in bottling plants. It owns numerous patents in this field, including the patents at issue in this case—U.S. Patent No. 6,155,408 ("the '408 patent") and the '974 patent. Both patents relate generally to the handling and inspection of bottles (referred to broadly in the patents as "containers") for defects and debris, a key feature of which is arranging the bottles in a way that is stable.

The '408 patent is directed to a "method and apparatus for rotating rotationally symmetrical containers such as bottles, while transporting them under backup pressure." During prosecution of the '408 patent, the examiner repeatedly rejected[1] the claims over PCT Publication WO 83/00135 ("the Christian reference"[2]). The examiner eventually allowed the claims, however, after Heuft made various arguments and

---

[1]     The prosecution history of the '408 patent is discussed in detail, infra.

[2]     The named inventor in this publication is Erik Christian Mernoe. The examiner initially misidentified the inventor by his middle name, however, and that error has propagated throughout these proceedings. To avoid confusion, we will continue to refer to the publication as the Christian reference.

amendments in response to the rejections. The '974 patent is directed to a "method and apparatus for inspecting rotating containers." It is a divisional of the '408 patent, and therefore includes an identical specification. The examiner allowed all of the claims of the '974 patent without rejection.

In 2005, several years after issuance of these patents, Heuft filed suit against IDC, alleging that certain bottling apparatuses sold by IDC infringed both the '408 and '974 patents. The parties later stipulated to dismissal with prejudice of all claims under the '408 patent, thus leaving only the '974 patent in suit. In October 2006, the district court construed the two claim terms of the '974 patent at issue, adopting Heuft's proposed constructions for "arranging" in claim 1 and "stabilizing means" in claim 6. These constructions were based on the plain meanings of those terms. The district court declined to adopt IDC's proposed constructions, which were based on alleged disclaimers of scope during prosecution of the '408 patent. A jury trial followed. As relevant to this appeal, during trial the district court granted IDC's motion to exclude the damages testimony of Heuft's expert, on the basis that the fundamental document underlying that testimony was not reliable. Because the expert's testimony was Heuft's only evidence of damages, the district court took that issue from the jury. The jury eventually rendered its verdict, finding that IDC infringed the '974 patent as construed by the district court.

Following trial, the district court addressed a number of post-trial motions. It denied IDC's renewed motion for judgment of non-infringement as a matter of law, finding substantial evidence to support the jury's verdict. The district court also denied Heuft's request for a permanent injunction, finding that Heuft had failed to show

irreparable harm or that the balance of hardships weighed in its favor. Finally, the district court declined to award any damages, despite the jury verdict in Heuft's favor. The parties timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

Claim construction is a question of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), over which we exercise plenary review. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Infringement, either literal or under the doctrine of equivalents, is a question of fact. Miken Composites, L.L.C. v. Wilson Sporting Goods Co., 515 F.3d 1331, 1336 (Fed. Cir. 2008).

The grant or denial of a motion for judgment as a matter of law is reviewed under the law of the regional circuit. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1372 (Fed. Cir. 2005). In the Ninth Circuit, the grant or denial of a motion for judgment as a matter of law is reviewed de novo. Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). Judgment as a matter of law "is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Id. "[W]hen reviewing a motion for judgment as a matter of law, we apply the law as it should be, rather than the law as it was read to the jury." Fisher v. City of San Jose, 509 F.3d 952, 957 (9th Cir. 2007) (quoting Pincay v. Andrews, 238 F.3d 1106, 1109 n.4 (9th Cir. 2001)).

B. Analysis

Infringement of the '974 patent is dependent upon the interpretation of two claim terms relating to the arrangement of containers in a way that maintains stability. We first address construction of these claim terms. We then assess the impact of those constructions on infringement.

1. Claim Construction

Claim 1 of the '974 patent recites "rotating the containers continuously alternately in opposite directions by arranging one of two consecutive containers stable against one of the at least two railings and the other stable against the other of the at least two railings." Claim 6 recites a "stabilizing means for the stable arrangement of one of two consecutive containers." The district court construed "arranging" in claim 1 as "putting into a proper order or into a correct or suitable sequence, relationship or adjustment." Heuft Systemtechnik GmbH v. Indus. Dynamics Co., No. 05-CV-6299, slip op. at 2 (C.D. Cal. Oct. 6, 2006). It construed "stabilizing means" in claim 6 as "narrowing the distance between the guiderails at an angle sufficient to interrupt the chaotic behavior of the bottles." Id. IDC argues that the claims of the '974 patent cannot be construed to encompass stably arranging containers using exit angles less than 30°, because such angles were disclaimed during prosecution of the related '408 patent. Heuft counters that the claim terms were correctly construed, contending that the prosecution history of the '974 patent is silent as to the measure of the exit angle, and that any disclaimer that may have arisen during prosecution of the '408 patent does not apply to the claims of the '974 patent.

Prosecution disclaimer occurs when a patentee, either through argument or amendment, surrenders claim scope during the course of prosecution. Elbex Video, Ltd. v. Sensormatic Elecs. Corp., 508 F.3d 1366, 1371 (Fed. Cir. 2007). Amendments or arguments that are merely vague, ambiguous, or subject to other reasonable interpretation are not sufficient to surrender claim scope. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1325 (Fed. Cir. 2003). Rather, in order for prosecution disclaimer to attach, the patentee's actions must be "clear and unmistakable." Id. at 1326.

We agree with IDC that in the '408 patent, Heuft disclaimed "arranging . . . containers . . . stable" or "means for the stable arrangement of . . . containers" using angles less than 30°. This is because its actions during prosecution were clear and unmistakable. From the outset of prosecution of the '408 patent application, the examiner rejected all pending claims over the Christian reference under 35 U.S.C. §§ 102 and 103. Heuft, in response, made amendments to the claims and argued, inter alia, that "the present invention provides for the increase and sharp decrease at an angle β of the distance between the railings creating the stable arrangement. This stable arrangement stops the propagation of any disturbances downstream. As noted above, Christian does not disclose any means for such stable arrangement." J.A. at 5078. When Heuft made this argument, no independent claim contained a limitation relating to the exit angle of the railings.

The examiner continued to reject the claims under the Christian reference, countering that "Christian's guides . . . provide stable arrangement . . . ." Id. at 5089. Heuft subsequently amended the independent claims to expressly recite an exit angle of 30° to 100°. E.g., id. at 5092 (amending claim to recite "arranging one of two

consecutive containers stable against one of the at least two railings and the other container stable against the other railing in the direction of conveyance after the first area <u>by reducing the distance between said at least two railings at an angle β of the lateral railings to each other of about 30° to 100° to about somewhat more than the diameter of the containers</u>" (amendment emphasized)).  This amendment tracked language in the specification relating to the only embodiment directed to angled guiderails.  <u>See</u> '408 patent, col. 2, ll. 12-18 ("[T]he distance between the two railings in the direction of conveyance is to begin with gradually broadened [sic] to about 1.5 times the diameter of the containers and then narrowed down at an angle of the two railings to each other of about 30 to 100°, preferably 50 to 80°, to somewhat more than the diameter of the containers.").  Accompanying this amendment, Heuft again argued that the relatively large exit angle of its invention distinguished it from Christian: "In an area following the first area, he [sic] angle β[3] of the present invention also produces a more marked change than the gradual reduction in the space between the rails as seen in Christian.  Christian does not suggest that there are the given advantages provided by angle β in the area following the first area."  J.A. at 5094.

In a final office action, the examiner continued to reject the claims over the Christian reference, observing that "[i]t is obvious that following the first area, there would be a second area wherein Christian's railings will be about 1.5 times the diameter of the containers as the distance between the railings is reducing to somewhat wider than the diameter of a single container.  Such tapered configuration of the railings would

---

[3]     As noted above, Heuft defined the angle β in the amendments to the claims as "about 30° to 100°."

obviously result in a tapered angle within 30° to 100° or 50° to 80°." Id. at 5114. Heuft filed a continued prosecution application, in which it added several new claims and made amendments to the existing ones, relating primarily to the geometry of the guiderails. Heuft also attempted to amend the specification. One such attempted amendment indicated that the "[t]he critical features [of the invention] are the distance between the railings 14 <u>and above all the angle β at which that distance narrows down in the third area 28</u>." Id. at 5144 (emphasis added). Once again, Heuft argued that the relatively large angle recited in the claims distinguished the invention over Christian. The examiner did not allow the amended specification, however, because it was not accompanied by a statement indicating that the amendment did not add new matter. The examiner did, however, stop applying the Christian reference after Heuft's amendments to the claims, presumably because the added limitations persuaded the examiner that the claims were patentably distinct. Following argument and amendments to the claims to address the examiner's remaining rejection under 35 U.S.C. § 112 ¶ 1, the examiner allowed the claims to issue.

Thus, throughout the course of prosecution of the '408 patent, Heuft not only repeatedly distinguished its claims over the Christian reference on the basis of the large exit angle's ability to stably arrange the containers, it also amended all of those claims to require an exit angle between 30° to 100°, a span which directly tracks the only discussion in the specification indicating an appropriate range for stably arranging containers. Under these circumstances, we have little difficulty concluding that Heuft clearly and unmistakably disclaimed exit angles less than 30°, at least with respect to

the '408 patent. The salient question is whether this disclaimer flows to the related '974 patent.

It is well-settled that "prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications." Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1314 (Fed. Cir. 2007) (quoting Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1333 (Fed. Cir. 2003)). "When the application of prosecution disclaimer involves statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial application are relevant in construing the claims at issue." Id. Thus, the issue is whether the disclaiming statements Heuft made with respect to the '408 patent related to the same subject matter that is at issue in the '974 patent.

The charts below display (with relevant language emphasized) the claim language at issue in the '408 patent application when the disavowing statements were first made (following Heuft's first amendment to the claims), see J.A. at 5073-74, the claim language as it appears in the issued '408 patent, and, finally, the corresponding language in the claims of the '974 patent. The first chart shows a comparison for the "arranging . . . containers . . . stable" limitation:

| '408 application (1st amendment) | '408 patent (as issued) | '974 patent (as issued) |
|---|---|---|
| 1.d.  <u>arranging one of two consecutive containers stable against one of the at least two railings and the other container stable against the other railing in the direction of conveyance after the first area</u>. | 1.c.  <u>arranging one of two consecutive containers stable against one of the at least two railings and the other stable against the other of the at least two railings in the direction of conveyance after the first area</u> by reducing the distance between said at least two railings at an angle β of the lateral railings to each other of about 30° to 100° to about somewhat more than the diameter of the containers and arranging the at least two railings substantially symmetrical to the midline of the conveying surface; thereby rotating said containers. | 1.e. rotating the containers continuously alternately in opposite directions by <u>arranging one of two consecutive containers stable against one of the at least two railings and the other stable against the other of the at least two railings in the direction of conveyance after the first area</u>; |

The second chart shows a like comparison for the "means for the stable arrangement of

. . . containers" limitation:

| '408 application (1st amendment) | '408 patent (as issued) | '974 patent (as issued) |
|---|---|---|
| 2.d. means for the stable arrangement of one of at least two consecutive containers at one railing and of the other container at the other railing, the means following the first area. | 2.d. means for the stable arrangement of one of two consecutive containers at one of the at least two railings and of the other container at the other of the at least two railings, the stable arrangement means following the first area in the direction of conveyance and comprising said distance between said at least two railings substantially symmetrically reducing at an angle β of said at least two railings to each other of about 30° to 100° to about somewhat more than the diameter of the containers and arranging said at least two railings substantially symmetrical to the midline of the conveying surface. | 6.e. stabilizing means for the stable arrangement of one of two consecutive containers at one of the at least two railings and of the other container at the other of the at least two railings the stabilizing means being disposed in the direction of conveyance after the first area. |

As illustrated by these charts, the statements Heuft made during prosecution of the '408 patent related to the same subject matter that is at issue in the relevant claim limitations of the '974 patent—namely, "arranging . . . containers . . . stable" and "means for the stable arrangement of . . . containers." Consequently, the arguments and amendments Heuft made during prosecution of the '408 patent also operate to disclaim exit angles less than 30° in the claims of the '974 patent.

## 2. Infringement

Following trial, IDC renewed its motion for judgment of non-infringement as a matter of law. It argued that the record lacked substantial evidence to support the jury's verdict of infringement, under either the district court's constructions of the claim terms or under constructions wherein exit angles less than 30° were disclaimed. The district court denied IDC's motion. IDC contends that it is entitled to judgment of non-infringement as a matter of law if we find that Heuft has disclaimed exit angles less than 30°, because the undisputed evidence at trial showed that the accused infringing products have exit angles of either 12° or 14°. Heuft does not confront IDC's position head on, responding only that:

> Adoption of a different claim construction would necessitate a new trial as Heuft presented its entire case based on the claim construction adopted by the district court. In particular, as a result of the district court's claim construction, Heuft did not present any evidence of infringement by equivalent structure under 35 U.S.C. § 112 ¶ 6 and agreed to remove language regarding infringement by equivalent structure under 35 U.S.C. § 112 ¶ 6 from the final jury instructions.

Cross-Appellant's Br. at 33 n.4 (citations omitted). Heuft does not dispute that IDC's accused products have exit angles of 12° and 14°—substantially less than 30°—only that, if remanded on IDC's proffered claim construction, it should be able to assert that IDC's products infringe claim 6 as structural equivalents under § 112 ¶ 6.

Heuft's argument misunderstands the concept of disclaimer. Disclaimer operates to prevent a patentee from capturing subject matter disavowed during prosecution, and applies with equal force to means-plus-function claims. See Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1359 (Fed. Cir. 2001) ("When a patentee advises the examiner (and the public after patent issuance) that a particular structure is not within his invention, the patentee is not permitted to assert in a subsequent

infringement action that the same structure is equivalent to the structure described in the patentee's specification for purposes of section 112 paragraph 6."); see also Omega Eng'g, 334 F.3d at 1325 (discussing Ballard Med. Prods.). Thus, when Heuft broadly disclaimed exit angles less than 30° during prosecution, it foreclosed the possibility that it could later attempt to assert that a 12° or 14° exit angle is structurally equivalent to an exit angle that, due to the disclaimer, must be 30° or more. Consequently, because it is undisputed that the exit angles of IDC's accused products are substantially less than 30°, "the evidence . . . permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao, 307 F.3d at 918. Accordingly, IDC is entitled to judgment of non-infringement as a matter of law.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's denial of IDC's motion for judgment of non-infringement as a matter of law and remand with instructions to enter judgment in favor of IDC.