Rick AVERSANO, Plaintiff(s),

v.

GREENBERG TRAURIG, LLP, et al., Defendant(s).

Case No. SACV 10–1353 DOC.

United States District Court, C.D. California.

Oct. 21, 2010.

Christopher W. Arledge, Todd A. Green, Turner Green Afrasiabi and Arledge LLP, Costa Mesa, CA, for Plaintiff.

Dylan Ruga, Michael P. McNamara, Steptoe and Johnson LLP, Los Angeles, CA, Justin Y.K. Chu, McCarter and English, New York, NY, for Defendant(s).

### ORDER GRANTING Defendant's Motion to Dismiss

DAVID O. CARTER, District Judge.

Before the Court is Defendant Greenberg Traurig, LLP, et al., ("GT")'s Motion to Dismiss. The Motion attempts to dismiss Plaintiff Rick Aversano ("Aversano")'s civil RICO claim. The Court GRANTS the Motion for the reasons stated below.

## I. Background

On September 17, 2010, Aversano filed his Second Amended Complaint ("SAC") against GT, in which he alleged that GT had committed breach of contract; breach of fiduciary duty; professional negligence; and a Racketeer Influenced and Corruptions Organizations ("RICO") violation pursuant to 18 U.S.C. § 1962. *See* SAC. As stated above, this Motion only involves Aversano's RICO claims.

According to the SAC, GT is a law firm that Aversano retained in order to seek advice participating in two transactions: Partnership Option Portfolio Securities ("POPS") and Hedge Option Monetization of Economic Remainders ("HOMER") (collectively "Transactions"). *Id.* at ¶ 2. GT also advised Aversano about the resulting audits of those transactions conducted by the United States Treasury Internal Revenue Service ("IRS"). *Id.*

Aversano's complaint alleges that GT advised him to invest millions of dollars in the POPS transaction, and charged Aversano for boilerplate legal opinions, and then offered to provide similar ones to clients of the POPS shelter promoter. Furthermore, the SAC states that, without disclosing to Aversano, GT accepted promoter fees after inducing Aversano to participate in the named transactions. *Id.* at ¶ 3–4. Aversano alleges that, following the IRS's ban on these transactions, he lost well over three million dollars. *Id.* at ¶ 6–7.

In making his RICO claim, Aversano argues that GT, along with other named and unnamed co-conspirators, formed an enterprise, through which "they entered into various arrangements amongst themselves to market and promote certain tax strategies to high net-worth individuals and business entities." *Id.* at ¶ 52. The enterprise then solicited individuals to engage in unlawful tax strategies, after assuring them that the transactions and strategies were legal and based on tax code "loopholes." *Id.* at 56. To do so, the SAC alleges that the enterprise committed mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *Id.* at ¶ ¶ 82–83. As a result, the SAC alleges that GT received over $600,000 in referral and kickback fees from promoters of the shelters. *Id.* at 57.

## II. Legal Standard

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Twombly*, 127 S.Ct. at 1968 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Civil RICO Claims

To establish a violation of substantive RICO, 18 U.S.C. § 1962(c), a plaintiff must prove " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir.1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). To establish a violation of 18 U.S.C. § 1962(d), a plaintiff must prove

that the defendants conspired to engage in a RICO violation.

 Under RICO, an "enterprise" consists of "an ongoing organization, formal or informal" that "function[s] as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). While the RICO enterprise "is an entity separate and apart from the pattern of activity in which it engaged," *id.*, "an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise" and need not have an ascertainable "structure beyond that necessary to carry out its racketeering activities." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551–52 (9th Cir.2007). A single entity cannot simultaneously be the "enterprise" and the "person" sued for allegedly violating RICO. *Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir.1996); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *Medallion TV Enters., Inc. v. SelecTV of Cal., Inc.*, 627 F.Supp. 1290, 1294 (C.D.Cal. 1986). Regarding the fourth element of RICO, "racketeering activity" consists of acts that are indictable under certain specified provisions of Title 18 of the United States Code, including mail and wire fraud. *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987).

 A "pattern of racketeering activity" is established when a plaintiff proves that a defendant committed two or more predicate acts. 18 U.S.C. § 1961(5). That requirement, however, is a minimum, and is not itself sufficient to establish a showing of a "pattern of racketeering activity." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 237–38, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.2004). Instead, a plaintiff must show that the predicate acts are sufficiently related and create a threat of continuing criminal activity. *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901; *Religious*

*Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir.1992). The threat of continuity may be established where the predicate acts themselves include a threat of future criminal actions, where an alleged perpetrator of the predicate acts is engaged in an ongoing criminal enterprise, or where the predicate acts are the enterprise's regular way of doing business. *H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. 2893. If the predicate acts are isolated or sporadic incidents, they do not amount to a "pattern of racketeering activity." *Durning v. Citibank Int'l*, 990 F.2d 1133, 1138 (9th Cir. 1993). Application of these principles requires a careful review of the facts presented in each case. *See H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

### III. Discussion

### A. Defendant's Allegation that the Civil RICO Claim is Barred as a Matter of Law

GT argues that Aversano's RICO claim is barred by both the applicable statute of limitations as well as by the Private Securities Litigation Reform Act. The Court considers these arguments first, as a finding that the claim is barred as a matter of law precludes the Court from needing to address the adequacy of the pleadings.

#### 1. The Statute of Limitations

 There is a four-year statute of limitations on bringing civil RICO claims. *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir.2001). That four-year clock begins tolling once the plaintiff has either actual or constructive notice of the injury, meaning the plaintiff "knows or should know of the injury that underlies his cause of action." *Id.* at 1109 (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996)).

In *Pincay*, the Court held that a written notice that the plaintiff would receive five-percent of the capital to be paid by investors was sufficient to start the statute of

limitations when he tried to sue under civil RICO for being deprived of more than five-percent of his income. *Pincay*, 238 F.3d. at 1108 The court reasoned that a written notice about the amount of money being deducted was "enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110 (citations omitted). In the present matter, GT argues that the statute of limitations tolled in October of 2008 because that marked four years after Aversano learned of the fraud.

GT points to extrinsic evidence that it says shows that as of October 24, 2004, Aversano knew of the secret referral fees received by Jay Gordon ("Gordon"), whom it argues was the only attorney from its firm alleged to have received referral fees. It offers evidence of an October 24, 2004 email Aversano sent to GT, in which he requested that the referral fees distributed to Gordon be returned to him, without any subsequent waiver of liability. GT Motion, 11. It also points to an October 25, 2004 letter Aversano received along with a check from Gordon, in which GT indicated it was returning a payment that Gordon had received but that the payment did not waive any rights of Aversano. *Id.* at 13. GT argues that this letter establishes that Aversano knew of the *injury* of the referral fees as of October 2004. Because "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock," *Rotella v. Wood*, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000), GT maintains that Aversano's knowledge of the referral fees meant that the statute of limitations had expired by October of 2008. Aversano's civil RICO claim was therefore barred, because it was not filed until June of 2009.

 The problem with GT's argument is that it assumes that the email and letter indicate that Aversano *did* know of the

referral fees at the time of sending and receiving them, respectively. It certainly does appear that the evidence supports GT's argument that Aversano knew as of October 2004 that Gordon had defrauded him, but the documents are extrinsic evidence to which Aversano has not been given a chance to respond or explain. The Court's ability to consider this extrinsic evidence is questionable. *See, e.g., Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002) (explaining that "[o]rdinarily a court may look only at the face of the complaint to decide a motion to dismiss" but also noting that the "incorporation by reference" rule of the Ninth Circuit can allow a court to look beyond the pleadings without converting the motion into one for summary judgment). Even if the Court does consider GT's extrinsic evidence, it does not dispose of the issue, because the letters raise additional factual questions that would require an opportunity for Aversano's response. Because the Court cannot resolve these factual questions, it does not find at this time that the statute of limitations barred the RICO claim.

### 2. The PSLRA

 The Private Securities Litigation Reform Act provides for an exclusion from civil RICO of any claim based on alleged misconduct that would have been actionable as securities fraud. *See* 18 U.S.C. § 1964(c). Under SEC Rule 10b–5, it is illegal to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. Aversano insists that the transactions involved were not "in connection with the purchase or sale of any security," and argues that he should therefore be free to proceed with his civil RICO

claim despite the PSLRA exclusion. The Court finds otherwise.

■ The definition of a security is "a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) (noting also "the Supreme Court's repeated rejection of a narrow and literal reading of the definition of securities"). The Ninth Circuit further clarified *Howey* by explaining that the Court held that a security requires an investment of funds in an enterprise "with an expectation of profits produced by the efforts of others." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (quoting *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir.2003)). Profit-seeking is construed broadly. *See, e.g., Warfield*, 569 F.3d at 1021 (finding that investing money for a charitable purpose qualified as seeking a profit for the purposes of defining securities, even though the investors had no intention of receiving any funds themselves because they "risked financial loss" given that the promises made to them could have been broken); *Sharp v. Coopers & Lybrand*, 457 F.Supp. 879, 889 (D.C.Pa., 1978) (holding that considerations of tax consequences qualify as profit-seeking for the purpose of defining securities).

■ Aversano's funds were allegedly used for the purchase of securities. The SAC expressly alleges that GT's lawyers induced Aversano to invest in two projects named the Partnership Option Portfolio **Securities** ("POPS") and **Hedge Option** Monetization of Economic Remainders ("HOMER"). SAC ¶ 2 (emphasis added). Aversano alleges that these projects were "investments." *See, e.g.,* SAC ¶ 34 (alleging a breach of contract because GT failed to give the proper ad-

vice about "the serious consequences of investing millions of dollars in an investment" that would be investigated by the IRS); SAC ¶ 45 (referencing the "tax-advantaged investments"); SAC ¶ 45 (describing the professional negligence resulting from GT's failure to "assess[ ] the consequences of making a substantial investment" in POPS and HOMER). Such investments, with a mutually recognized "potential for losses," SAC ¶ 56, qualified as securities, as they were *investments* (see above), were part of a common *enterprise* (which Aversano alleges in order to meet the elements of civil RICO), and also were invested with the expectation of *profits*. Thus, GT's fraud, if any, furthered a scheme to purchase securities, as evidenced by the complaint.

The Rule 12(b)(6) standard provides for dismissals due to a failure to state a claim, and here, the complaint itself reveals that funds were used to purchase securities. Without considering the extrinsic evidence, the allegations in the SAC show that "by the terms of the offer, the plan of distribution, and the economic inducements held out" to Aversano, the investments are characterized as securities. *See SEC v. Joiner*, 320 U.S. 344, 352–353, 64 S.Ct. 120, 88 L.Ed. 88 (1943). The Court therefore need not turn to consideration of the extrinsic evidence to determine that the PSLRA applies here to bar the civil RICO claim.

### B. The Civil RICO Pleadings

Because the Court found grounds to dismiss the civil RICO claims based on the PSLRA, it need not reach the merits of GT's argument that Aversano has not met the standard for pleading a civil RICO allegation.

### IV. Disposition

For the reasons stated above, GT's Motion to Dismiss is GRANTED. The civil RICO claim is dismissed with prejudice.

Because the civil RICO claim was the basis for federal jurisdiction, the case is therefore REMANDED to state court for want of federal jurisdiction.

IT IS SO ORDERED.